**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DINORAH JIMENEZ NIEVES<br>2220 E. Pacific Street<br>Philadelphia, PA 19134<br><br>Plaintiff,<br>v.<br><br>GM HOLDINGS, LLC<br>3548 K Street<br>Philadelphia, PA 19134<br><br>Defendant. | : | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Dinorah Jimenez Nieves (hereinafter referred to as "Plaintiff," unless indicated otherwise) against GM Holdings, LLC (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 (hereinafter "Section 1981" - 42 U.S.C. § 1981), the Americans with Disabilities Act, as amended (hereinafter "ADA" - 42 USC §§ 12101, et. seq.), the Pennsylvania Human Relations Act (hereinafter "PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). [1]

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the PHRA and PFPO once properly administratively exhausted. Plaintiff was, however, required to initiate this lawsuit pursuant to a right-to-sue letter prior to such PHRA exhaustion. Plaintiff's PHRA and PFPO claims will mirror identically her Title VII and ADA claims, and they are analyzed identically in the Third Circuit as well.

2. Plaintiff contends that she was subjected to discriminatory and retaliatory treatment while employed with Defendant (as explained *infra*) and that she was unlawfully terminated from her employment.

**JURISDICTION AND VENUE**

3. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. State claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

4. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

5. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because the actions underlying this case occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

6. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission (hereinafter "EEOC") and dual-filed said charge with the Pennsylvania Human Relations Commission (hereinafter "PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-

filing his Charge with the EEOC and PHRC and filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff is a heterosexual, adult, Hispanic (born in Puerto Rico) female, who speaks English and Spanish, and who resides at the address captioned above.

9. Defendant is a property management company, located at the address captioned above, that sells and leases commercial and residential real estate.

10. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. Plaintiff was hired on or about November 28, 2025, as a Leasing Agent until her wrongful termination on or about April 14, 2026 (discussed further *infra*).

12. Plaintiff was primarily supervised by Director of Operations, Jen Walsh (female, Caucasian, Lesbian – hereinafter "Walsh").

13. Defendant does not have an internal Human Resources department or contact.

14. Throughout her employment with Defendant, Plaintiff was a very hard-working employee who performed her job well and had little to no history of progressive discipline.

15. Unfortunately, throughout Plaintiff's employment with Defendant, Plaintiff was subjected to discrimination, a sexually harassing hostile work environment, and terminated by Defendant because of her race and national origin, gender, actual/perceived/record of health

conditions, and in retaliation for complaining about national origin, disability, and sexual orientation discrimination on behalf of herself and others.

16. Plaintiff interviewed for her position with Defendant with Walsh and Owner, George Manosis (male, Caucasian - hereinafter “Manosis”).

17. Defendant mismanaged its operations in an outright nonsensical manner.

18. By way of example, Plaintiff was initially led to believe that she would be taking a role to assist Walsh in her duties and act as an idiomatic “right-hand-man” to her.

19. However, on Plaintiff’s first day of work, Walsh and Property Manager, Brien McNally (male, Caucasian – hereinafter “McNally”) called Plaintiff into a meeting wherein Walsh informed Plaintiff that her original job was “no longer on the table” and that she would be immediately demoted.

20. In addition to this, Walsh placed Plaintiff on a 90-Day Probation because she accused Plaintiff of “lying” about who her fiancé was.

21. Walsh informed Plaintiff that if she had known who Plaintiff’s fiancé was, then Plaintiff would not have been hired, just because Plaintiff’s fiancé knew Manosis – a fact that Walsh already knew and that Plaintiff was not hiding.

22. Immediately after this meeting, Walsh began to inform other employees that (1) Plaintiff was a liar and not to be trusted and (2) Plaintiff was originally only hired just to be a Spanish interpreter, which is false.

23. Plaintiff speaks Spanish; however, Manosis thought that Plaintiff’s bilingual proficiency would be helpful to her job as a leasing agent.

24. Unfortunately, the hostility in the workplace grew more intense (discussed further *infra*).

**Race/National Origin Discrimination**

25. Walsh treated Plaintiff and other Latinos/people of Hispanic origin disparately compared to those of other races, such as Caucasians.

26. For example, but not intending to be an exhaustive list:

a. Walsh inquired as to Plaintiff's daughter going to Yale University and commented to Plaintiff, "you are lucky, not too many Latinos in Yale;"

b. Whenever Latino customers needed help, Walsh repeatedly informed Plaintiff, "those are your people, go ahead and talk to your people";

c. Walsh routinely sent Plaintiff to dangerous neighborhoods alone, when other leasing agents would go in groups. Walsh informed Plaintiff that she "should be able to handle the ghetto since [Plaintiff] grew up in Camden, NJ;"

d. Walsh referred to Black and Hispanic people as "ghetto" or "these people" and had a picture of the Confederate flag on the back of her car (a well-known symbol of the defense of slavery and/or white supremacy); and

e. Plaintiff attempted to translate the lease agreement for an individual who spoke only Spanish, but Walsh refused to allow her to do so, explaining "if he's going to live in America, he needs to speak English."

27. Plaintiff complained to Walsh on several occasions about what she believed to be race/national origin discrimination. By way of example:

a. Plaintiff complained to Walsh that she felt very uncomfortable in a situation in which Defendant hired an exterminator who smelled like alcohol, aggressively hit on Plaintiff, and referred to Plaintiff as "Maria" despite reminding him that her name was not Maria. The exterminator went on to comment that Plaintiff

"looked like a Maria." Walsh responded to this complaint by aggressively dismissing Plaintiff, saying, "get out of my office, get out of my office."

b. Plaintiff confronted Walsh regarding the incident in which the Spanish-speaking customer was forced to sign a lease agreement in English, to which Walsh simply responded, "I don't have time for this."

c. Plaintiff informed Walsh that when she referred to Black people and/or Hispanic people as "ghetto," or "these people," it was very offensive and hurtful. Again, Walsh dismissed Plaintiff's concerns, stating, "I don't have time for this."

28. None of Plaintiff's concerns regarding discrimination against herself or others based on race/national origin were properly addressed or investigated.

29. Instead, the discriminatory treatment continued, and Walsh became annoyed and/or aggressive any time Plaintiff brought up her discriminatory and unlawful actions.

**Severe and Pervasive Sexual Harassment and Sexual Orientation Discrimination**

30. In addition to the race and/or national origin discrimination that Plaintiff was subjected to/observed by Walsh, Walsh subjected Plaintiff to a toxic, severe and pervasive sexually harassing hostile work environment.

31. The aforesaid hostile work environment began with Plaintiff's pre-interview, wherein Walsh stated, "I and another gay girl deal with the 'gays', and a white guy speaks with white clients, and not sure where to put you, but we will find a place."

32. At Plaintiff's interview, Walsh informed Plaintiff that she was gay and asked Plaintiff, "Is that going to be a problem? Do you have a problem with gay people?"

33. Plaintiff responded to the aforesaid question that she did not "have a problem with gay people," but felt that the aforesaid question was highly inappropriate in the workplace.

34. Thereafter, Walsh would discuss her sex life in detail almost daily with Plaintiff and other employees of Defendant.

35. For example, Walsh arrived at work one day and announced to the office that her wife required a "sex drug" because Walsh's sex drive was so crazy that her wife "couldn't keep up with her."

36. Walsh repeatedly discussed how attractive gay residents were in front of Plaintiff and even watched residents who performed in dance clubs so that she could look at their outfits and discuss how "sexy" or "hot" they were.

37. Plaintiff was consistently pressured to answer inappropriate questions regarding her dating and sex life. For example, Walsh often asked who Plaintiff was dating or attracted to, despite knowing Plaintiff was engaged.

38. Additionally, Walsh told Plaintiff on several occasions that she specifically did not like to rent to gay men as "they don't pay their rent," which Plaintiff considered outright offensive and blatant sexual orientation and/or gender discrimination.

39. Plaintiff tried to address Walsh's behavior, informing Walsh that she cannot discriminate against tenants based on their sex/sexual orientation, but Walsh simply ignored Plaintiff's complaints.

40. Instead of addressing Plaintiff's complaints, Walsh continued to subject Plaintiff to increased levels of hostility and animosity leading up to her unlawful termination.

**Disability Discrimination**

41. Throughout Plaintiff's employment with Defendant, Plaintiff was also subjected to discrimination, a hostile work environment, and retaliation because of her disabilities and requests for medical accommodations.

42. Plaintiff suffered and continues to suffer from ADA-qualifying disabilities, including but not limited to irritable bowel syndrome (IBS) and arthritis of the knees (among other associated complications/conditions).

43. As a result of Plaintiff's aforementioned health conditions, she suffers from intestinal flare-ups, severe pain, swelling, and mobility issues, which (at times) interfere with her ability to perform some daily life activities, such as walking, sleeping, eating normally, and working (among other daily life activities).

44. Despite Plaintiff's aforesaid health disabilities and limitations, she was able to perform the essential functions of her position well; however, she (at times) required some reasonable accommodations.

45. For example, Plaintiff (at times) needed 1) occasional time off work to manage her symptoms; 2) the ability to walk shorter distances; and 3) to refrain from extended periods of walking (all reasonable accommodations under the ADA).

46. At all relevant times hereto, Defendant's management was aware of Plaintiff's aforesaid health conditions, as she informed Walsh that she had IBS when she was hired.

47. Walsh informed Plaintiff that this would not be a problem as her wife purportedly suffered from the same health condition.

48. Despite her initial representation, however, Walsh exhibited extreme frustration with Plaintiff's need to take intermittent time off from work to care for and treat her aforesaid health conditions

49. For example, Walsh often incorrectly advised Plaintiff that her IBS was not an emergency and refused to understand why Plaintiff needed time off.

50. Additionally, Walsh repeatedly mocked and made jokes about Plaintiff's "bad knees" and mobility issues caused by her arthritis.

51. In addition to the disability discrimination, retaliation, and hostility that Plaintiff was subjected to by Walsh, upon direct observations and belief, Walsh attempted to refuse to rent to a tenant who was in a wheelchair.

52. Although Manosis eventually got involved in the aforesaid situation, Walsh exhibited obvious distaste and frustration with the tenant's disabilities and requested accommodations (such as a handicap parking space). In fact, Walsh refused to give this individual their handicapped parking space, and when Plaintiff informed Walsh that she was violating the Fair Housing Act and the ADA, Walsh simply ignored Plaintiff.

53. As a result, all of Plaintiff's complaints of discrimination, retaliation, and failure to accommodate fell on deaf ears.

**<u>Retaliation (Including Termination)</u>**

54. After complaining of the aforementioned instances of discrimination, hostile work environment, and retaliation, Defendant subjected Plaintiff to further retaliation.

55. Based on information and belief, Walsh informed Ashley (female, Black - last name unknown – hereinafter "Ashley"), that she was going to "do anything to make [Plaintiff] quit."

56. By way of example, one of the punishments that Walsh implemented "to make [Plaintiff] quit" was to frequently send Plaintiff on errands that were normally the responsibility of maintenance personnel (which Plaintiff was not).

57. Plaintiff was then abruptly terminated on or about April 11, 2026, for alleged attendance issues.

58. Defendant's purported reason for termination is completely false and pretextual, as:

a. The majority of Plaintiff's time off had been for her aforesaid serious health conditions;

b. Plaintiff left early on the Friday prior to her termination to renew her driver's license with explicit permission from Walsh;

c. Other, non-Hispanic, non-disabled employees were allowed to come in late, leave early, take days off, etc. with no repercussions;[2] and

d. Plaintiff was terminated in very close proximity to her objections to/complaints of discrimination, a sexually harassing hostile work environment, and retaliation on behalf of herself and others.

59. Thus, Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation and ultimately terminated because of (1) her race and/or national origin; (2) her actual/perceived/record of health conditions; (3) her requested accommodations; (4) her objections to/complaints of severe and pervasive sexual harassment/sexually harassing hostile work environment; and (5) her expressed objections to/complaints of race and/or national origin discrimination, sexual orientation and/or gender

[2] In or about the week prior to and the week of Plaintiff's termination, two other leasing agents, Ashley (Black) and McNally (Caucasian) both had scheduled days off and/or left work early;

discrimination, and disability discrimination on behalf of herself and others, all in violation of Title VII and the ADA.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race/National Origin Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, and a hostile work environment through disparate treatment, demeaning and/or derogatory comments and treatment (as outlined *supra*) because of her race and/or national origin.

62. Plaintiff objected to/complained of the aforementioned instances of race/national origin discrimination and disparate treatment by Defendant's management, but her concerns were ignored.

63. Plaintiff was then terminated for completely pretextual reasons on or about April 11, 2026.

64. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and ultimately terminated because of her race and/or national origin and/or her objections to/complaints of race/national origin discrimination.

65. Plaintiff also believes and therefore avers that her race/national origin was a motivating or determinative factor in Defendant's decision to terminate her employment.

66. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

**COUNT II**
**Violations of Title VII of 42 U.S.C. Section 1981 ("Section 1981")**
**([1] Racial Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

67. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68. The aforesaid allegations also constitute violations of Section 1981, and they are analyzed identically in the Third Circuit. Thus, Plaintiff's Section 1981 claims mirror the claims as set forth in Count I.

**COUNT III**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Gender/Sexual Orientation Discrimination; [2] Sexual Harassment; [3] Hostile Work Environment [4] Retaliation)**

69. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70. Plaintiff was subjected to a hostile work environment through gender and sexual orientation discrimination, sexual harassment and retaliation in violation of Title VII.

71. Plaintiff complained to Defendant's management about the aforesaid sexual harassment and gender discrimination to no avail, and instead of properly investigating or remedying her concerns, Defendant's management subjected her to a retaliatory hostile work environment and terminated her employment.

72. Plaintiff believes and avers that her gender and/or sexual orientation was a motivating or determinative factor in Defendant's decision to terminate her employment.

73. Plaintiff also believes and therefore avers that because of her complaints of sexual harassment and/or gender discrimination, Defendant terminated her employment

74. Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of Title VII.

**COUNT IV**
**<u>Violations of the Americans with Disabilities Act, as Amended ("ADA")</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment; [3] Retaliation; and [4] Failure to Accommodate )**

75. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76. Plaintiff suffers from a qualifying health condition under the ADA which affected her ability (at times) to perform some daily life activities.

77. Plaintiff kept Defendant's management informed of her health condition and need for medical accommodations throughout her employment with Defendant.

78. Despite Plaintiff's aforementioned health condition and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

79. Plaintiff requested reasonable accommodations from Defendant.

80. Defendant failed to properly accommodate Plaintiff.

81. Plaintiff believes and therefore avers that she was subjected to discrimination, retaliation, and ultimately terminated because of (1) her actual/perceived/record of health condition; (2) her requested medical accommodations (*i.e.*, time off for flare-ups); and (3) Defendant's failure to properly accommodate her health conditions (set forth *supra*).

82. Plaintiff also believes and therefore avers that her health condition was a motivating and/or determinative factor in the termination of her employment by Defendant.

83. These aforesaid actions constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering, and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
Timothy S. Seiler, Esq. (316913)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: October 30, 2026

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Dinorah Jimenez Nieves | : | CIVIL ACTION |
| v. | : | |
| GM Holdings, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/30/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JIMENEZ NIEVES, DINORAH

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

GM HOLDINGS, LLC

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADA, Title VII, Section 1981, PFPO and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 10/30/2026

SIGNATURE OF ATTORNEY OF RECORD



**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______